## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

EDGAR ZUNIGA-MEJIA,

     Plaintiff,

v.                                     Case No.  5:23-cv-20-TKW/MJF

OFFICER GODWIN, *et al.*,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a prisoner proceeding *pro se*, commenced this civil action in January 2023. He alleges that Defendants violated the Eighth Amendment by failing to provide Plaintiff dental treatment and violated the First Amendment by retaliating against him. Because this case has been pending for more than one year, and Plaintiff has failed to pay even one penny of the initial partial filing fee, and instead engaged in manipulative tactics and attempted to perpetrate a fraud on the District Court, the District Court should dismiss this action. The undersigned makes this recommendation even though—because of the statute of limitations—dismissal likely will preclude Plaintiff from asserting his claims.

# I. BACKGROUND

## A. Plaintiff Commences This Action Without Paying the Fees

On January 19, 2023, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against four defendants: (1) Officer Godwin; (2) Mrs. Filipczack; (3) Jeff Thomas; and (4) the Health Service Administrator at Graceville Correctional Institution. Doc. 1 at 2–4. Plaintiff alleged that Defendants violated his constitutional rights between January and April 2019. *Id.* at 7–13.

When he filed this civil action, Plaintiff had $728.23 in his inmate trust account, which was more than sufficient to pay the filing fee. Despite this, Plaintiff did not pay the filing fee when he commenced this action—in violation of Local Rule 5.3—and also did not move for leave to proceed *in forma pauperis* ("IFP").

## B. The Undersigned's Order Regarding the Filing Fee

On January 25, 2023, the undersigned ordered Plaintiff to pay the filing fee or move for leave to proceed IFP. Doc. 3. The undersigned imposed a compliance deadline of February 15, 2023. *Id.* Also in that order, the undersigned directed the clerk of the court to send to Plaintiff a form application for leave to proceed IFP. On January 25, 2023, the

clerk of the court complied with the undersigned's order and sent Plaintiff the form application—including the motion and Prisoner Consent Form and Financial Certificate. Doc. 3; *see* Doc. 9.

The form application included a motion that requires the litigant to state: "I have not divested myself of any property, monies, or any items of value for the purpose of avoiding payment of said fees." Doc. 9 at 1. The form application also included a "Prisoner Consent Form and Financial Certificate." The Prisoner Consent Form and Financial Certificate explains that if the plaintiff's "current account balance is more than $402.00," he "will not qualify for *in forma pauperis* status and must pay the full $402.00." Doc. 9 at 3 ¶ 2.

## C.   Plaintiff's First Motion for Additional Time

On February 13, 2023—despite still having sufficient funds to pay the filing fee—Plaintiff requested additional time to file a motion for leave to proceed IFP. In support, Plaintiff alleged that he had "sent the request to prison officials with the form and financial certificate [but] the prison officials do not respond to the request yet." Doc. 4 (errors in original). Based on Plaintiff's assertions—and because at that time the

undersigned did not yet know that Plaintiff had sufficient funds to pay the filing fee—the undersigned granted the extension. Doc. 5.

**D.    Plaintiff Spends His Funds During the Interval**

As noted above, when Plaintiff commenced this lawsuit on January 19, 2023, he possessed $728.23 in his inmate trust account, which was more than enough money to pay the filing fee. Doc. 9 at 11. But instead of paying the $402 filing fee, Plaintiff expended his funds at the prison canteen and to purchase "JPAY MEDIA." The chart below sets forth these disbursements during the initial period after Plaintiff initiated this civil action.[1]

| Date | Expenditure | Balance |
|---|---|---|
| 1/22/2023 | $18.33 at the prison canteen | $710.40 |
| 1/29/2023 | $13.72 at the prison canteen | $696.68 |
| 2/4/2023 | $10.00 on "JPAY MEDIA" | $686.36 |
| 2/5/2023 | $11.65 at the prison canteen | $674.71 |
| 2/12/2023 | $54.13 at the prison canteen | $620.46 |

[1] As part of his IFP motion, Plaintiff provided to this court a printout of the transactions in his inmate trust account. Doc. 9. Pursuant to court order, on October 23, 2023, Plaintiff filed a supplemental response with a copy of his inmate trust account. Doc. 18.

| 2/19/2023 | $19.33 at the prison canteen | $600.59 |
|---|---|---|
| 2/23/2023 | $18.20 at the prison canteen | $582.20 |
| 2/26/2023 | $18.85 at the prison canteen | $563.35 |
| 3/2/2023 | $5.54 at the prison canteen | $557.44 |
| 3/5/2023 | $10.55 at the prison canteen | $546.89 |
| 3/9/2023 | $13.92 at the prison canteen | $532.81 |
| 3/15/2023 | $50.00 on "JPAY MEDIA" | $482.67 |
| **Total Spent:** | **$244.22** | |

Doc. 9 at 13–14.

Despite these expenditures, on March 15, 2023, Plaintiff still had $482.67 remaining in his account. *Id.* at 14. This still was more than enough to pay the filing fee.

**E.**    **Plaintiff's Second Motion for Additional Time**

On March 19, 2023—despite the fact that Plaintiff still possessed sufficient funds to pay the filing fee—Plaintiff again requested additional time to file a motion for leave to proceed IFP. As with his previous motion, Plaintiff alleged that this extension was necessary due to delays caused by prison officials. *See* Doc. 6. Based on Plaintiff's representations—and

because at that time the undersigned still did not have Plaintiff's inmate account statements—the undersigned granted Plaintiff's motion. Doc. 7.

**F.    Plaintiff Continues to Spend His Funds**

On March 18, 2023, the day before Plaintiff moved for his second extension of time to file a motion for leave to proceed IFP, Plaintiff had $482.67 in his inmate trust account. Doc. 9 at 14. Plaintiff, however, continued to spend his funds even after he requested his second extension of time to comply with the order dated January 25, 2023.

| Date | Expenditure | Balance |
|---|---|---|
| 3/19/2023 | $95.41 at the prison canteen | $387.26 |
| 3/19/2023 | $10.00 on "JPAY MEDIA" | $377.26 |
| 3/23/2023 | $12.29 at the prison canteen | $364.02 |
| 3/26/2023 | $10.47 at the prison canteen | $353.55 |
| 3/29/2023 | $5.86 at the prison canteen | $347.46 |
| 4/5/2023 | $18.07 at the prison canteen | $329.33 |
| **Total Spent:** | **$152.10** | |

Doc. 9 at 14. In total, between January 19, 2023 and April 8, 2023, Plaintiff spent **$396.32** on items at the prison canteen and on "JPAY MEDIA."

**G.**    **Plaintiff Finally Files His Motion for Leave to Proceed IFP**

On April 9, 2023, *nearly three months after Plaintiff commenced this lawsuit* and only *after Plaintiff caused his balance to fall below $402.00*, Plaintiff filed a motion for leave to proceed IFP and included a Prisoner Consent Form and Financial Certificate. Doc. 9 at 13.[2] Plaintiff signed the form under the following statement:  "I am unable to make full prepayment of fees or to give security therefore . . . . *I have not divested myself of any property, monies, or any items of value for the purpose of avoiding payment of said fees*." Doc. 9 at 1 (emphasis added).

This statement is patently false. From the date Plaintiff commenced this action in January 2023 to the date he filed his motion for leave to proceed IFP (April 9, 2023), Plaintiff intentionally spent **$396.32** of his funds on discretionary items, which left him with only $**329.33** in his inmate trust account. Plaintiff's expenditure of his funds

_____

[2] Plaintiff utilized the Northern District of Florida form application for leave to proceed IFP. This indicates that Plaintiff received the Prisoner Consent Form and Financial Certificate form sent by the clerk of the court on January 25, 2023. These forms informed Plaintiff that if his account balance exceeded $402, he would be required to pay the full filing fee. Additionally, these forms informed Plaintiff that even if he were granted leave to proceed IFP, the District Court would assess an initial partial filing fee as required by 28 U.S.C. § 1915(b)(1). Doc. 9 at 3–4.

indicates that Plaintiff's motions to extend the deadlines to move to proceed IFP were ploys to afford Plaintiff time to spend his account balance and thereby avoid paying the entire filing fee.

Furthermore, even after Plaintiff filed his motion for leave to proceed IFP, Plaintiff continued to expend his funds, as the chart below demonstrates.

| Date | Expenditure | Balance |
|---|---|---|
| 4/9/2023 | $18.24 at the prison canteen | $311.09 |
| 4/12/2023 | $9.38 at the prison canteen | $301.35 |
| 4/16/2023 | $13.87 at the prison canteen | $287.48 |
| 4/17/2023 | $5.24 at the prison canteen | $282.24 |
| 4/23/2023 | $18.18 at the prison canteen | $263.78 |
| 4/24/2023 | $3.30 at the prison canteen | $260.48 |
| 4/30/2023 | $22.39 at the prison canteen | $237.88 |
| 5/4/2023 | $58.19 at the prison canteen | $179.47 |
| 5/7/2023 | $14.05 at the prison canteen | $165.42 |
| **Total Spent:** | **$162.84** | |

Doc. 18 at 4.

**H.    The Order to Pay the Initial Partial Filing Fee**

In light of Plaintiff's fairly obvious attempts to manipulate the court, the undersigned initially rejected Plaintiff's motion to proceed IFP. Doc. 10. But because the statute of limitations would preclude Plaintiff from pursuing his claims were this case dismissed, and because there is "a strong preference for deciding cases on the merits" whenever reasonably possible, *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014), on May 8, 2023, the undersigned granted Plaintiff's motion for leave to proceed IFP and ordered him to pay an initial partial filing fee of $187.21. Doc. 12; *see* 28 U.S.C. § 1915(b)(1).  The undersigned provided Plaintiff until June 7, 2023, to pay the fee. The undersigned also warned Plaintiff that if he failed to pay the initial partial filing fee—and instead continued to spend his money on items at the canteen—the case likely would be dismissed. *Id.* at 3.

**I.    Plaintiff Continued to Spend His Funds**

Even after the undersigned explicitly warned Plaintiff that this case likely would be dismissed if he failed to pay the initial partial filing fee, this did not deter Plaintiff from continuing to spend his funds. The chart below shows these expenditures.

| Date | Expenditure | Balance |
|---|---|---|
| 5/13/2023 | $6.94 at the prison canteen | $157.76 |
| 5/14/2023 | $10.19 at the prison canteen | $147.57 |
| 5/30/2023 | $25.12 at the prison canteen | $122.28 |
| 5/31/2023 | $5.20 at the prison canteen | $117.08 |
| 6/3/2023 | $13.00 at the prison canteen | $104.08 |
| 6/4/2023 | $13.95 at the prison canteen | $90.13 |
| 6/7/2023 | $17.26 at the prison canteen | $72.30 |
| 6/11/2023 | $10.59 at the prison canteen | $61.71 |
| 6/14/2023 | $6.40 at the prison canteen | $55.03 |
| 6/15/2023 | $6.76 at the prison canteen | $48.27 |
| 6/18/2023 | $17.18 at the prison canteen | $31.09 |
| **Total Spent:** | **$132.59** | |

Doc. 18 at 4–6. Despite having sufficient funds to do so, Plaintiff again failed to pay the initial partial filing fee as ordered by the undersigned.

## J.    **The First Order to Show Cause**

On June 21, 2023, the undersigned ordered Plaintiff to show cause for his failure to pay the initial partial filing fee and explain why the case

should not be dismissed for Plaintiff's failure to pay the initial partial

filing fee. Doc. 13.

## K.   Plaintiff's Continued Expenditures

Despite the undersigned's order to pay the initial partial filing fee

and the undersigned's order to show cause of June 21, 2023, Plaintiff

continued to spend his funds as shown in the chart below.

| Date | Expenditure | Balance |
|---|---|---|
| 6/25/2023 | $9.57 at the prison canteen | $21.22 |
| 6/30/2023 | $4.52 at the prison canteen | $16.60 |
| 7/2/2023 | $6.68 at the prison canteen | $9.92 |
| 7/9/2023 | $3.41 at the prison canteen | $6.40 |
| **Total Spent:** | **$24.18** | |

Doc. 18 at 6.

## L.   Plaintiff's Response to the First Order to Show Cause

On July 6, 2023, Plaintiff responded to the undersigned's first order

to show cause.  Plaintiff stated that he was not required to pay the initial

partial filing fee. Doc. 14. Plaintiff acknowledged that, in order to submit

an initial partial filing fee to the court, he was required to submit a

special withdrawal to prison officials so that prison officials could timely

process the request and remit funds to the court. *Id.* at 3. Plaintiff, however, did not indicate that he even attempted to initiate the process to pay the initial partial filing fee by submitting a special withdrawal request. Rather, he asserted, among other things, that because his funds came from a "covid relief payment," the clerk had no "lawful authority" to deduct Plaintiff's filing fee from his inmate trust account. *Id.* at 6. Plaintiff also asserted that "prison officials can't touch the money in [Plaintiff's] spending account . . . ." *Id.* at 4.

## M.   <u>The Second Order to Show Cause</u>

On July 25, 2023, the undersigned issued an order that addressed Plaintiff's arguments and again required Plaintiff to show cause why his lawsuit should not be dismissed for Plaintiff's failure to pay the initial partial filing fee. Doc. 15. The undersigned imposed a compliance deadline of August 9, 2023. The undersigned again warned Plaintiff that the failure to pay the initial partial filing fee likely would result in dismissal of this action.

## N.   <u>Plaintiff Continued to Spend His Funds</u>

On July 11, 2023, $600 was deposited into Plaintiff's account. Doc. 18 at 6. After the FDC deducted money for non-discretionary items,

Plaintiff still had a balance of $161.00. *Id.* at 9. Undeterred by the undersigned's multiple warnings that Plaintiff's complaint could be dismissed for non-payment of the initial partial filing fee, Plaintiff continued to spend funds at the prison canteen until he completely depleted his funds, as the chart below demonstrates.

| Date | Expenditure | Balance |
|------|-------------|---------|
| 7/15/2023 | $55.83 at the prison canteen | $105.17 |
| 7/16/2023 | $7.79 at the prison canteen | $92.38 |
| 7/24/2023 | $21.03 at the prison canteen | $70.71 |
| 7/26/2023 | $14.65 at the prison canteen | $55.85 |
| 7/30/2023 | $19.30 at the prison canteen | $36.55 |
| 8/2/2023 | $15.93 at the prison canteen | $20.28 |
| 8/6/2023 | $8.55 at the prison canteen | $11.73 |
| 8/7/2023 | $4.90 at the prison canteen | $6.83 |
| 8/9/2023 | $4.05 at the prison canteen | $0.00 |
| **Total Spent:** | **$152.03** | |

Doc. 18 at 8–10.

In total, from April 9, 2023 through August 9, 2023, Plaintiff spent **$471.64** on items at the canteen instead of submitting the initial partial filing fee of $187.21. Doc. 18 at 4–10.

**O.** **Plaintiff's Response to the Second Order to Show Cause**

On August 8, 2023, Plaintiff filed a response to the undersigned's second order to show cause. Plaintiff again refused to pay the initial partial filing fee and again stated that he was not required to pay it. Doc. 16.

**P.** **The Undersigned Afforded Plaintiff Additional Time to Pay**

After Plaintiff filed his response to the second order to show cause, the undersigned afforded Plaintiff *an additional four months* to pay the initial partial filing fee. Plaintiff did not take advantage of that opportunity and did not make any payment toward the initial partial filing fee.

**Q.** **The Third Order to Show Cause**

In a final effort to avoid dismissal of Plaintiff's case, on December 11, 2023, the undersigned again ordered Plaintiff to show cause for his failure to pay the initial partial filing fee. In that order, the undersigned specifically warned Plaintiff of the consequences of failing to pay the

filing fee: "**If Plaintiff fails to pay the initial partial filing fee immediately, the District Court likely will dismiss this case. Because the events giving rise to Plaintiff's claim allegedly occurred more than four years ago, once Plaintiff's case is dismissed, Plaintiff likely will be forever barred from raising his claims.**" Doc. 19. Plaintiff responded to that order by stating that he has no funds with which to pay the initial partial filing fee. Doc. 20.

## II.  DISCUSSION

### A.  <u>Plaintiff's Failure to Pay the Filing Fee Warrants Dismissal</u>

"A party who files a civil case must *simultaneously* either pay any fee required under 28 U.S.C. § 1914 or move for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915." N.D. Fla. Loc. R. 5.3 (emphasis added). The IFP statute—28 U.S.C. § 1915—allows federal courts to authorize the commencement of a civil action by a prisoner who submits an affidavit that they are unable to pay. *See Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997). The ability to proceed IFP is not an absolute right, however. *Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986); *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969). Rather, it is a privilege that is afforded to those litigants unable to pay costs without

undue hardship. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948); *Camp*, 798 F.2d at 437. A court "*shall dismiss* the case at *any time* if the court determines that . . . the allegation of poverty is untrue . . . ." 28 U.S.C. § 1915(e)(2)(A) (emphasis added).

The purpose of § 1915(e)(2)(A) is to prevent false statements of poverty and the manipulation of courts by litigants who transfer or disburse funds in order to avoid paying filing fees. *Attwood*, 105 F.3d at 613. If a court determines that the plaintiff is "unable to pay the partial filing fee at the time of collection because he intentionally depleted his account to avoid payment, the court in its sound discretion may dismiss the action." *Wilson v. Sargent*, 313 F.3d 1315, 1321 n.7 (11th Cir. 2002) (per curiam); *see* N.D. Fla. Loc. R. 41.1.

Before dismissing a civil action for failure to pay the filing fee, however, the district court must make an "inquiry into why the fee had not been paid as ordered." *Wilson*, 313 F.3d at 1320. When a plaintiff's "own statements prove that he did not comply with a court order and that compliance was within his control, no further investigation is needed." *Walker v. Powell*, 351 F. App'x 384, 386 (11th Cir. 2009).

Here, Plaintiff's inmate trust account statement indicates that Plaintiff had sufficient funds to pay full filing fee when he initiated this action. Furthermore, Plaintiff had the funds to pay the initial partial filing fee for four months after he filed this civil action. Despite this ability to pay, Plaintiff made a conscious decision to pay neither the full filing fee nor the initial partial filing fee. The undersigned provided Plaintiff multiple opportunities to pay the initial partial filing fee, all to no avail.

By the time Plaintiff filed his motion for leave to proceed IFP, Plaintiff had intentionally reduced his trust balance from $728.23 to $329.33. Plaintiff did this despite having knowledge that he would be required to pay an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). Doc. 9 at 4 ¶ 3(c). The motion for leave to proceed IFP also informed Plaintiff that he could not escape the initial partial filing fee by expending his funds. *See id.* at 1. Despite this knowledge, Plaintiff elected to spend all of his discretionary funds—**$471.64**—and not pay the initial partial filing fee.[3]

---

[3] As Judge Posner observed, when a plaintiff "thinks a more worthwhile use of his funds would be to buy peanuts and candy . . . than to file a civil

Because Plaintiff's non-payment was caused by his own actions, the District Court should dismiss this action. Dismissal is consistent with the penalty imposed by other courts for similar conduct by other litigants. *See Wilson*, 313 F.3d at 1321 n.7 (noting that if the plaintiff is unable to pay the initial partial filing fee "because he intentionally depleted his account to avoid payment, the court in its sound discretion may dismiss this action"); *Martin v. United States*, 317 F. App'x 869, 870–71 (11th Cir. 2008) (affirming the denial of an IFP application when the district court found that plaintiff had received $1,818 in deposits in the preceding six months but "chose to spend those funds on matters other than this litigation"); *Evans v. Croom*, 650 F.2d 521, 525–26 (4th Cir. 1981) (noting that a court may dismiss a case if it appears that withdrawals were designed to avoid paying the filing fee).

## B.    Dismissal Effectively with Prejudice Is Appropriate

When courts dismiss civil actions for failure to pay the initial partial filing fee under 28 U.S.C. § 1915, they typically dismiss the cases

---

rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor." *Lumbert v. Illinois Dep't of Corr.*, 827 F.2d 257, 260 (7th Cir. 1987).

without prejudice. When the statute of limitations on an underlying claim has run, however, dismissal effectively is *with* prejudice. *See Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018). That would be the case here.[4] Dismissal with prejudice is permissible when a district court finds (1) a clear record of delay or willful conduct, and (2) lesser sanctions would be inadequate. *Mickles*, 887 F.3d at 1280 (citation omitted).

### 1.   *Plaintiff's Dishonesty, Bad Faith, and Delay*

A litigant acts in bad faith when he knowingly or recklessly engages in tactics that needlessly obstruct the litigation or functioning of a court. *See Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). A party demonstrates bad faith by needlessly delaying a case and by intentionally disobeying a court order. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). A litigant

---

[4] The events giving rise to Plaintiff's claims allegedly occurred between January 2019 and April 2019. Doc. 1. The statute of limitations for claims under § 1983 brought in Florida is four years. *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002). Accordingly, a civil action to address such claims would need to have been filed, at the latest, in April 2023. Thus, a dismissal without prejudice in this case effectively would be a dismissal with prejudice.

also acts in bad faith when he attempts to perpetrate a fraud upon the court. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Furthermore, a litigant acts in bad faith when he manipulates or spends funds in his prison trust account to ensure that he cannot pay the filing fee. *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 468, 468–69 (S.D.N.Y. 2004). After all, if "every inmate were permitted to simply spend funds in the canteen to avoid paying a filing fee, the *in forma pauperis* review would be a waste of time and effort." *Briand v. State of Fla.*, No. 4:06-cv-104-WS, 2006 WL 1890189, at *1 (N.D. Fla. July 10, 2006).

Here, Plaintiff committed multiple acts of bad faith, attempted to perpetrate a fraud on the District Court, and employed manipulative tactics to avoid paying the filing fee:

- On January 19, 2023, when Plaintiff initiated this case, he possessed $728.23 in his inmate trust account. Yet he did not pay the filing fee when he initiated this case, in violation of Rule 5.3.

- On February 13, 2023, Plaintiff sought additional time to file a motion to proceed IFP despite having $619.92 in his inmate trust account and despite having been informed by the undesigned that if the Plaintiff's "current account balance" was "more than $402.00," he would "not qualify for *in forma pauperis* status and must pay the full $402.00." Doc. 9 at 3 ¶ 2.

Page 20 of 24

- Between February 13, 2023, and March 18, 2023, Plaintiff spent $136.34, knowing full well that these funds should have been used to pay the filing fee.

- On March 18, 2023, Plaintiff still had $482.67 in his inmate trust account, yet he made no effort to pay the filing fee.

- On March 19, 2023, despite having $482.67 in his account, Plaintiff again sought additional time to file his motion for leave to proceed IFP and also spent an additional $105.41, leaving himself only $377.26 in his inmate trust account.

- On April 9, 2023, Plaintiff made a material misrepresentation to the District Court and attempted to perpetrate a fraud on the Court by signing and filing this statement: "I have not divested myself of any property, monies, or any items of value for the purpose of avoiding payment of said fees." Doc. 9 at 1. Between the time Plaintiff initiated this civil action and Plaintiff made that statement to the District Court, Plaintiff had spent $396.32 of his funds.

- Between April 9, 2023, and May 7, 2023, Plaintiff spent $162.84, which he instead could have used to pay the initial partial filing fee.

- Between May 8, 2023, and August 9, 2023, Plaintiff ignored the undersigned's warnings and spent an additional $308.80 which also could have been used to pay the initial partial filing fee.

- In total, from January 19, 2023, to present, Plaintiff spent at least **$867.96** on items at the prison's canteen and "JPAY MEDIA" instead of paying the full filing fee or at least the initial partial filing fee.

- Plaintiff has completely ignored the undersigned's order that he pay the initial partial filing fee.

- Plaintiff has not paid even one penny of the initial partial filing fee despite the undersigned having afforded Plaintiff over one year to do so.

- Plaintiff contends that he does not have to pay the initial partial filing fee—much less the full filing fee—and has made no efforts to attempt to comply with the court's orders to pay the initial partial filing fee.

- Because of Plaintiff's contumacy and refusal to pay the initial partial filing fee, this case has been pending for over one year without any progress being made toward a resolution on the merits.

### 2.    *No Lesser Sanction Would Suffice*

Dismissal is appropriate in "cases presenting a clear record of delay or willful or contumacious conduct." *Camp*, 798 F.2d at 438. In this case, no lesser sanction would suffice to deter Plaintiff and others who would seek to perpetrate a fraud upon the court. For example, a mere admonition would be insufficient. The undersigned admonished Plaintiff multiple times, to no avail:

- Doc. 10 at 3 (warning Plaintiff that failure to pay the filing fee likely would result in dismissal of this action;

- Doc. 12 at 3 (warning Plaintiff that spending funds that should have been forwarded to the court may result in dismissal of this case);  and

- Doc. 15 (warning Plaintiff the failure to pay the initial partial filing fee could result in dismissal).

Plaintiff contumaciously disregarded these admonitions and continued to spend his funds until he had exhausted his account. A monetary sanction would be meaningless because Plaintiff would refuse to pay any monetary penalty, just as he has refused to pay the initial partial filing fee.

Similarly, a threat of holding Plaintiff in contempt would prove inefficacious insofar as the District Court could impose no meaningful penalty: Plaintiff already is incarcerated and likely would refuse to pay any fine to purge his contempt. Ultimately, "[n]othing short of putting the plaintiff out of court will properly punish his serious and protracted violation of the rules and adequately deter future violations by other parties." *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006).

## III. CONCLUSION

"As is often the case in life, . . . the whole of abusive action is greater than the sum of the parts of which it is made." *Fuery v. City of Chicago*, 900 F.3d 450, 454 (7th Cir. 2018). Plaintiff's deliberate bad faith and misconduct—including his attempt to perpetrate a fraud on the District Court—transcends Plaintiff's interest in this litigation and so violates

the judicial process that only dismissal is appropriate. For these reasons,

the undersigned respectfully **RECOMMENDS** that:

1.    This case be **DISMISSED**.

2.    The clerk of court be directed to close this case file.

At Pensacola, Florida this <u>22nd</u> day of January, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**